## CLOW GASTEAM HEATING CO. v. HIXSON.
### No. 11660.

Court of Civil Appeals of Texas. Dallas.
Dec. 16, 1933.

Rehearing Denied Jan. 20, 1934.

Leake, Henry & Young and Hawkins Golden, all of Dallas, for appellant.

C. K. Bullard, of Dallas, for appellee.

LOONEY, Justice.

On October 10, 1930, Clow Gasteam Heating Company sold and delivered to Don and Wesley Peacock, Jr. (a copartnership, under the name of Peacock Military Academy), twenty-seven Clow Gasteam radiators, the consideration being $1,864, paid and to be paid as follows: $75 cash, and the balance in twenty-four equal consecutive monthly installments, evidenced by a promissory note.

The sale contract between the parties, in legal effect a chattel mortgage, contains the following: "If I fail to make any of said monthly payments as above specified, at the option of you or your assigns, all remaining installments may be declared immediately due and payable, and in such event I agree to return the said chattel to said Company or its assigns, on demand, and said Company, or its assigns, may without notice of demand and without legal process enter into premises and take possession of said chattel and make such disposition thereof as may be deemed desirable, and all payments made shall be retained as liquidated damages for the use of said chattel or said chattel may be sold with or without notice at public or private sale and the proceeds thereof, less expenses, credited upon the amount unpaid. I further agree to take good care of said chattel and to be responsible for its loss by fire, theft or other casualty and not to remove it from Peacock Military Academy, Dallas, Texas, unless I first obtain the written consent of said Company or its assigns. Said chattel shall not become a part of the realty."

The record discloses that on November 23, 1932, the court below, at the suit of Mayfield Lumber Company, a creditor of the Peacock Military Academy, appointed W. C. Hixson

receiver of the academy properties real and personal, specifically mentioning the real estate, the administration and other buildings situated thereon, and all fixtures, equipment, supplies, and appurtenances of every kind (including the radiators in question) used in, or connected with the operation of, the academy, authorizing the receiver to conduct and operate the school, to employ managers, agents, and servants, and, in his discretion, to have same operated by a lessee. At the time the receiver qualified, the academy was under lease to an operating company for the school year, 1932–1933, but, at the end of the term in June, 1933, the receiver took active possession and conducted a summer school, and the small profit earned was expended in paying back salaries due teachers and officials. The academy properties, including the radiators in question, are being operated by North Texas Military Academy, under lease by the receiver for the school year 1933–1934; the lessee corporation was organized to operate the school, and is without capital stock or assets.

Prior to the appointment of the receiver, the partnership defaulted in payment of ten or eleven monthly installments of the note mentioned above, and at the time of the receivership there remained unpaid $1,447.47, according to the contention of appellant, and, as contended by the receiver, the amount unpaid was $1,317.85.

In this situation, appellant exercised its option to accelerate the maturity of the entire indebtedness, and asserted the right, as provided in the contract, to repossess the radiators, and to that end filed its petition in the receivership suit, alleging the contract, its breach, accelerated maturity of the indebtedness, that the radiators were decreasing in salable value by becoming obsolete, and from age and use; wherefore appellant sought an order of court directing the receiver to release possession of the radiators and for general relief.

This pleading was filed in the receivership suit and is styled a motion, yet it is in effect a separate suit against the receiver to recover possession of the radiators, and, as such, is within the purview of article 2310, R. S. See Eaton v. Whisenant (Tex. Civ. App.) 50 S.W.(2d) 1109, and authorities cited.

The receiver answered, contending that the radiators constituted a part of the necessary equipment of the school building, that it would be impossible to operate the school without them, that to dispense with their use would result in the impairment of rights of creditors and persons with whom the receiver had made contracts for the operation of the school.

On the hearing, the court denied the relief sought, from which this appeal is prosecuted.

The reasons actuating the court are revealed by excerpts from the judgment, as follows: "The court further finds that it is absolutely necessary for the receiver to have the said heaters to conduct the school for the coming year (1933–1934), and that, if the interveners herein (appellant) are permitted to remove the gas heaters, that it will be very damaging to the school * * * and the court finds that it is best not to permit the radiators to be removed at this time, and denies the application of said parties for the removal of said radiators." That the court recognized the legal right of appellant to repossess the radiators is shown by quotations from the judgment, as follows: "The court further finds that the receiver has certain sections of the radiator that he can do without, and he has stated to the court that said company may take those sections if they so desire; and the court permits the said company to remove the sections (eight in number) as mentioned, by said receiver allowing credit for them on said account. The court further states, in refusing this request, that he will permit the receiver to run the school for the coming year (1933–1934) and, if he fails to pay for the radiators, or pay a substantial amount on said radiators, that he will then consider another motion next year to permit the parties herein to remove certain other radiators from the building."

Thus it is obvious that, although recognizing the right of appellant to repossess the radiators, the court refused to grant the relief sought, because, in its judgment, their use in conducting the school for the ensuing year was necessary.

■ ■ The right of appellant to repossess the mortgaged property under the facts is, in our opinion, manifest. The doctrine in point, announced in 5 R. C. L. 462, § 98, is that: "The mortgagee is generally accorded the right to the possession of the mortgaged property on a breach of the condition, and he may maintain an action to recover possession thereof, even from the mortgagor, or from any other person in whose hands he may find the chattels; although to take such possession he is not authorized to use violence or force." Under substantially similar circumstances presented in Singer, etc., Co. v. Rios, 96 Tex. 174, 71 S. W. 275, 276, 60 L. R. A. 143, 97 Am. St. Rep. 901, the Supreme Court, speaking through Chief Justice Gaines, said: "The proposition that such a stipulation is valid (a stipulation giving the mortgagee right to take possession of the mortgaged chattels on default), and that the mortgagee may take peaceable possession of the property without the consent, and even over the protest, of the mortgagor, is sustained by the great weight of authority. The following cases are in point (citing a long list of au-

thorities)." Also see 9 Tex. Jur. 164, 165, 167, and 168.

■■ In view of the authorities and undisputed facts, we think appellant could, without force or violence, have taken the radiators from the possession of Peacock Military Academy (mortgagor), and, if refused, could have maintained a successful action against mortgagor for possession. Is the receiver vested with better title or a superior right than that possessed by the mortgagor? We do not think so. The general rule, deduced from authorities the country over, is stated in 53 C. J. pp. 99, 100, § 125, as follows: "A receiver has no right to property which does not belong to the individual or corporation over whose estate he was appointed, at the time of the appointment, and where he comes into possession of such prop-. erty he may transfer it to the real owner. He can take no right or title which was extinguished before his appointment, and where property is conveyed or assigned to him by the party under the court's order, the receiver can claim only such rights as the grantor or assignor could have enforced. A receiver is in no sense a bona fide purchaser, and he can acquire no other, greater, or better interest than the debtor had in the property. To this extent he has been held to stand in the shoes of the debtor; he has the same right which the latter would have had, and can set up no rights against claims which the debtor could not have set up. * * *" Also see Dennis v. Smith (Tex. Civ. App.) 49 S.W.(2d) 909; Continental Trust Co. v. Brown (Tex. Civ. App.) 179 S. W. 939; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339. Therefore, if Peacock Military Academy could not have resisted the demand of appellant for possession of the radiators, it follows that its receiver should not be permitted to successfully resist the suit for possession.

While it is not contended that the radiators became a part of the realty, yet, in view of the facts, we do not deem it out of place to discuss the question. The sale contract (mortgage) provides that "said chattels (radiators) shall not become a part of the realty." The evidence shows that each of the twenty-seven radiators is separate and complete within itself, and that they are connected to the gas piping in the building by metal coupling or rubber hose. The court found that "the radiators have been attached to the building and become a part of the building (in the manner above mentioned) although the same can be removed without damage to the property." So it appears that it was not intended that the radiators should become part of the realty; furthermore, it is shown that they can be readily removed, without injury to the property; hence the right of appellant to possession is without

complications. See Moody v. Aiken, 50 Tex. 65; Hugh Cooper Co. v. American Nat'l Exchange Bank (Tex. Civ. App.) 30 S.W.(2d) 364, and authorities cited. Appellant, having shown a clear legal right as against the Peacock Military Academy, mortgagor, to repossess the radiators, should, in our opinion, have been permitted to recover from the receiver, who stands in precisely the same position.

The judgment appealed from, impounding the radiators in the hands of the receiver to be used in operating the school for the exclusive benefit of other creditors of the mortgagor, in our opinion, was unauthorized. Manifestly, the radiators will constantly deteriorate from age and use, diminishing the value of the security upon which appellant holds a first, in fact, an exclusive, contract lien.

■ The doctrine is well settled that a court of equity is without authority to so conduct a receivership as to use, or in any manner consume property to the prejudice of the rights of a first lienholder. Houston, etc., Co. v. Clint [Tex. Civ. App.] 159 S. W. 409; Howe v. Harding, 76 Tex. 17, 13 S. W. 41, 43, 18 Am. St. Rep. 17.

The judgment below is reversed, and judgment here rendered for appellant.

Reversed and rendered.