**F. F. EICHMAN et al., Appellants,**

v.

**HIGHLAND PARK STATE BANK,**
Appellee.

No. 3587.

Court of Civil Appeals of Texas.

Eastland.

Feb. 24, 1961.

Rehearing Denied March 17, 1961.

Levey & Goldstein, M. M. Pena, Jr., San Antonio, for appellants.

George F. Manning, San Antonio, for appellee.

WALTER, Justice.

Highland Park State Bank filed suit against F. F. Eichman, Ralph Mendez and Jose Valdez for a deficiency judgment after a chattel mortgage foreclosure sale on some dry cleaning equipment, hereinafter referred to as Sickel Cleaners. The court rendered judgment non obstante veredicto for the bank for $9,536.18.

The defendants have appealed from such judgment contending the court erred in granting said judgment. The parties agree that the only question involved on this appeal is whether or not there was any evidence of probative value to support the jury's finding that the foreclosure sale was not conducted fairly. We find no such evidence and affirm the judgment.

The chattel mortgage provided, upon default, the bank had the right to sell the security at private sale without notice or at public sale in the manner prescribed by law.

The evidence shows without dispute the following: that F. F. Eichman, Ralph Mendez and Jose Valdez executed a note for $13,825 to Highland Park State Bank, payable in monthly installments of $200 each, secured by a chattel mortgage lien on Sickel Cleaners; that the February 1, 1956, installment was not paid; that on March 13, 1956, the bank wrote the makers of the note a letter reminding them of the amount due and advising them the note would be turned over to an attorney for collection unless it received their attention; that the makers of the note permitted same to be placed in the hands of the bank's attorney, who posted notice on April 10, 1956, and all of the makers of the note were notified of the time and place of the sale; that on April 23, 1956, Mr. Eichman requested, in writing, that the bank postpone the foreclosure sale and give him more time to raise the money and the bank agreed to such postponement; that in said letter to the bank, Eichman asserted: "In the event satisfaction of said indebtedness is not made on or before 12:00 noon, May 15, 1956, the undersigned personally or through his attorney, Jay Sam Levey, shall at such time surrender possession of that equipment described in said chattel mortgage to the Bank. In the event the said Bank acquiesces in this request for deferment of date of said sale and it is found not possible to satisfy said indebtedness it is fully understood that the said Bank intends to hold a sale under the identical terms and provisions set out in the said letter of April 17, and said sale is to be held at 4:00 P.M. on Tuesday, May 15, 1956, at 2507 South Presa Street, San Antonio, Texas. It is further understood that said Bank shall, at its option, post public and/or private notices and/or otherwise notify interested parties of the said sale to be held on the 15th day of May, 1956, at the time and place above specified."; that Mendez and Valdez had notice that the sale had been postponed; that on May 2, 1956, the bank's attorney again posted notice of a foreclosure sale to be held on May 15, 1956.

From 1938 to 1955, the appellant Eichman owned and operated three different cleaning

businesses; Eichman had experience selling cleaning businesses and had actually sold three; before the bank's foreclosure sale he sold Sickel Cleaners for $16,725, receiving $400 cash, and the purchaser assumed the bank note and executed another note to the seller; that said purchaser defaulted and turned the place of business back to Eichman; Eichman tried for about a month to sell Sickel Cleaners before the foreclosure sale, but failed to find a purchaser; Eichman knew about said foreclosure sale, told some people about it, but did not attend the sale.

Jose Valdez, Ralph Mendez and Oscar Valdez sold the Sickel Cleaners to Mr. Eichman on or about August 1, 1955. Jose Valdez had bought and sold three different dry cleaning establishments, had notice of said foreclosure sale, tried to find some buyers, but failed and did not attend the sale.

Counsel for the bank conducted the sale at the Sickel Cleaners' premises. He testified substantially as follows: that he opened the doors at Sickel Cleaners between one and two o'clock in the afternoon and received people who were interested in the sale; that he explained to the ten or twelve people who looked at the equipment that it was being sold to satisfy an obligation to the bank and that he was receiving bids; that he received one bid for $800 and another bid for $2,250 and a bid from the bank for $5,000; that the property was sold to the bank for $5,000 and the appellants were given credit for this amount on their note.

■ The Courts of Texas, since the case of Singer Sewing Machine Co. v. Rios, 96 Tex. 174, 71 S.W. 275, 60 L.R.A. 143, have recognized that a provision in a chattel mortgage which authorizes and empowers the holder to take possession of mortgaged property, upon the mortgagor's default, and sell same at public or private sale is valid.

Appellants rely upon Associates Investment Co. v. Lenz, Tex.Civ.App., 288 S.W.2d 857 (No Writ History). In Lenz the holder of the mortgage informed the mortgagor by letter that his mortgaged car would be sold unless payment of his balance was made on or before January 30, 1953. After mailing this notice and on the day before the deadline, namely on January 29, 1953, the finance company sold the car under the provisions of the mortgage which authorized a private sale without notice. It is apparent, that, after the finance company notified the mortgagor that his security would be sold on a certain day and then proceeded to sell it at another and earlier date, the sale was not conducted fairly and in good faith.

■ We hold that when a private sale is made under the mortgage it must in all respects be fairly conducted. We hold the evidence conclusively established that the bank conducted the sale openly and fairly on the date and at the time and place set forth in the notice and that all interested parties had notice of such sale. Mr. Eichman's letter to the bank also spells out the date, time and place of sale. This case can be distinguished from the Lenz case on the facts.

We have considered all of appellants' points and find no merit in them and they are overruled. The judgment is affirmed.

### On Motion for Rehearing

We have again reviewed the entire record and find from the evidence introduced by the appellee and the evidence introduced by the appellants that there is no evidence to support the jury's finding that the sale was not conducted fairly.

Motion for rehearing overruled.